IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| LARRY W. HAYNES, | ) | CIVIL ACTION NO.: 4:04-22820-SB-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I. PROCEDURAL HISTORY

The claimant, Larry W. Haynes, filed applications for (SSI) on October 30, 2001, alleging disability since June 1, 1994, due to social anxiety disorder, panic attack, heart beating fast, pains in chest, persistent fear, and shakes (Tr. 90-93, 103). His applications were denied initially, and upon reconsideration (Tr. 71-78, 80-81). Following a hearing on November 25, 2003 (Tr. 66-70), the Administrative Law Judge (ALJ), Karen H. Baker, found in a decision dated June 22, 2004, that

plaintiff was not disabled with the meaning of the Act (Tr. 12-21). The Appeals Council denied plaintiff's request for review of the hearing decision on September 7, 2004 (Tr. 4-6). The ALJ's decision was the Commissioner's "final decision" for purposes of judicial review under Section 205(g) of the Act. See 42 U.S.C. § 405(g).

## II.  FACTUAL BACKGROUND

The plaintiff, Larry W. Haynes, was born on May 15, 1954, (Tr. 90) and was 49 years of age on the date of his hearing before the ALJ. He has an eleventh grade education and past work experience as the owner of a construction business (Tr. 104,109).

## III.  DISABILITY ANALYSIS

The plaintiff argues that the ALJ erred in failing to find him disabled due to an anxiety disorder and panic attacks. Plaintiff argues that he is being denied disability, in part, based upon evidence that was never placed in this record and which he has not had the ability to confront. Plaintiff asserts that the ALJ depends solely upon the absence of any reported anxiety symptoms while plaintiff was in prison and ignored substantial evidence in the record. (Plaintiff's brief).

In the decision of June 22, 2004, the ALJ found the following:

1.      The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2.      The claimant's impairments are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).

3.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4.    The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

5.    The claimant has the residual functional capacity as set out above, for a range of "medium" work.

6.    The claimant is unable to perform any of his past relevant work, according to vocational testimony (20 CFR §§ 416.965).

7.    The claimant is a "younger individual" (20 CFR § 416.963).

8.    The claimant has "a limited education" (20 CFR § 416.964)

9.    The claimant has no transferable skills from any past relevant work (20 CFR §§ 416.968)

10.    Although the claimant's exertional limitations do not allow him to perform his past relevant work, according to the vocational expert there are medium, unskilled jobs that exist in the significant numbers in the national economy the claimant could perform. Examples of such jobs include work as a machine operator, on/off bearing puncher crimper, and marker. Therefore, using Medical-Vocational Rule 203.26 for decision-making, the claimant would not be "disabled."

11.    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

(Tr. 20-21).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under

the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence[1] and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

---

[1]Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). He must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## IV.  MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case.  The medical records as set out by the defendant have not been disputed by the plaintiff and plaintiff did not set out a summary of the medical records in his memorandum. Therefore, the undisputed and relevant medical evidence as stated by the defendant is set forth herein.

Plaintiff was examined by Linda M. McKinnon, M.D., a consultative physician, on January 30, 2002.  Plaintiff reported previous receipt of disability benefits due to anxiety/panic disorder entailing episodes of chest pain and pressure, shortness of breath, and a feeling of doom lasting three to four days, until his incarceration between October 1999, and October 2001.  He also reported he had never sought or received treatment for his anxiety disorder, with the exception of limited treatment with medication.  He further reported that he smoked cigarettes daily.  He additionally reported he could drive but had no automobile.  He denied current alcohol consumption. Examination revealed a flat affect, visual acuity of 20/50 bilaterally and poor eye contact.  Plaintiff also was oriented in three spheres, demonstrated a weight of 193 pounds at a height of 70 inches, had a normal eye examination, and normal musculoskeletal examination, with the exception of a fifth finger right hand contracture.  Dr. McKinnon diagnosed anxiety/panic disorder, and recommended psychiatric examination (Tr.144-146).

Records of Louis Mathis, M.D., a family physician, between March 1 and 14, 2002, revealed treatment with medication for anxiety (Tr. 148, 154-156).  During this period, plaintiff reported

experiencing panic attacks and social isolation. Dr. Mathis referred plaintiff for psychiatric examination (Tr. 148, 154-156).

In a statement dated March 15, 2002, Dr. Mathis reported he refused to treat plaintiff with requested Xanax for his panic disorder, whereupon plaintiff had requested transfer of his medical records to another physician.

Plaintiff was examined by Bruce Kofoed, Ph.D., a consultative licensed clinical psychologist, on March 25, 2002. Plaintiff reported experiencing anxiety-related difficulties since the late 1980s, including panic, sleep difficulty and social isolation. He also reported he had never sought mental health treatment for his mental disorder, with the exception of treatment with medication, or undergone psychiatric hospitalization. He acknowledged that he was not currently taking any medication. He further reported incarceration between 1999 and 2001 because of a driving under the influence (DUI) offense. He additionally reported he had not consumed alcohol in over three years. He also reported he smoked cigarettes daily. He further reported he cared for his own personal needs such as prepared simple meals and visited his parents occasionally (Tr. 158-160).

Examination also revealed a mildly depressed and anxious mood, a flat affect, poor mental tracking skills, poor mental tracking skills, poor verbal recall after brief delay and reports of reduced interest in sexuality. However, plaintiff was oriented to date, day of the week and the current president, and he demonstrated appropriate dress and grooming, appropriate weight for his height, the absence of psychotic processes, fair to good mental arithmetic, the ability to copy psychotic processes, fair to good mental arithmetic, the ability to copy geometric shapes with good attention to detail and fair visual recall after brief delay. Plaintiff denied frequent crying and paranoid delusions or ideas (Tr. 159-160).

-7-

Dr. Kofoed diagnosed mild to moderate depression; social anxiety, panic and avoidant personality disorders; and a history of alcohol abuse. He concluded plaintiff likely had poor stress tolerance and mental tracking skills for complex tasks (Tr. 160-161).

In a statement dated April 4, 2002, plaintiff's mother stated plaintiff experienced anxiety and panic attacks. She also stated plaintiff performed household cleaning and other chores, prepared simple meals, raked his yard occasionally and assisted a relative in a sign making business occasionally (Tr. 117).

Records of Dr. McKinnon between April 8 and 23, 2002, revealed treatment with medication for depression and anxiety. During this period, plaintiff reported "feeling much better" with treatment, including eating better, improvement with insomnia and sleeping well and performing and completing a task which he felt was progress. He also reported smoking and previous self-medication with alcohol. He further reported previous and current treatment with Xanax had been and continued to be effective. Dr. McKinnon recommended plaintiff seek psychiatric treatment (Tr. 193-195).

On April 12, 2002, Larry O. Clanton, Ph.D., a State Agency Psychologist, determined that plaintiff was not significantly limited in his abilities to remember locations and work-like procedures: understand, remember and carry out short, simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and

length of rest periods; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation.  Dr. Clanton found that he had moderate limitations in his abilities to understand, remember and carry out detailed instructions; interact appropriately with the general public; and set realistic goals or make plans independently of others (Tr. 176-179).

In a statement dated April 30, 2002, to a Department of Health and Human Services interviewer, plaintiff reported he cared for his own personal needs (Tr. 120).

On September 6, 2002, D.C. Price, Ph.D., a State agency psychologist concurred with Dr. Clanton's mental residual functional capacity (RFC) assessment (Tr. 178).

On September 12, 2002, a State agency physician determined plaintiff retained the physical RFC to lift 50 pounds occasionally and 25 pounds frequently; stand and/or walk and sit six hours in an eight-hour workday; operate right hand controls, finger with the right hand, climb ramps and stairs, balance, stoop, kneel, crouch and crawl frequently; perform work not requiring any ladder, rope, or scaffold climbing or far visual acuity; and that he had no communicative or environmental or other manipulative or visual limitations (Tr. 181-184).

In a statement dated October 27, 2003, plaintiff reported that he took Calcium, Prilosec, "Bayer" (presumably aspirin) and Goody Headache Powder and that he took no prescription medication (Tr. 141).

In a statement dated December 2, 2003, plaintiff stated he experienced panic attacks and social isolation (Tr. 87-88).

In a statement dated January 22, 2004, plaintiff reported he took Calcium, Tagamet, Bayer aspirin and Goody Headache Powder (Tr. 139).

Plaintiff was examined by Spurgeon Cole, Ph.D., his consultative clinical psychologist, on January 30, 2004.  Plaintiff reported a history of panic disorder entailing four to five panic attacks weekly, sleep difficulty, an erratic appetite, low energy, social isolation and self-treatment thereof with alcohol, but that he had not consumed alcohol in several months.  He denied previous mental health treatment, with the exception of treatment with medication, or psychiatric hospitalization.  He reported current treatment with Xanax.  He also reported he cared for his own personal needs, performed household cleaning and other chores, and performed limited cooking (Tr. 197-199).

Examination revealed a constricted affect (Tr. 197), a sad expression (Tr. 197), an anxious mood (Tr. 197), and poor concentration (Tr. 198-199).  It also revealed that plaintiff was alert (Tr. 197), oriented (Tr. 198) and lucid (Tr. 197), and that he weighed 200 pounds at 76 inches in height (Tr. 197).  He had good eye contact (Tr. 197), satisfactory psychomotor movement (Tr. 198), the absence of psychosis (Tr. 197-198), normal grooming and satisfactory personal hygiene (Tr. 197), clear, relevant, coherent speech (Tr. 197-198), well formulated, open responses with the ability to conduct a meaningful conversation (Tr. 197) and an apparently average cognitive ability (Tr. 197).

Dr. Cole diagnosed depression and panic and avoidant personality disorders.  He concluded plaintiff was limited to work not requiring significant concentration or interaction with the public, co-workers or supervisors, and recommended more significant mental health treatment (Tr. 198-199).

-10-

In a statement which is undated, plaintiff reported he took Zyprexa, Prevacid, aspirin, and Goody Headache Powder (Tr. 134).

## V. ARGUMENTS

Plaintiff appears to assert that the ALJ erred in not relying on the medical opinions in the record. Plaintiff states that the ALJ ignored the medical evidence in the record and based her decision on the fact that while plaintiff was in prison he did not receive any treatment for his anxiety/social disorder.

Defendant argues that the ALJ's decision was based on substantial evidence and that she correctly applied the five-step sequential evaluation.

First, the ALJ found that plaintiff was not working and had not engaged in substantial gainful activity since his alleged onset of disability. At the second and third steps of the sequential evaluation, the ALJ determined that the medical evidence indicates that plaintiff has a "problem with alcohol abuse, possible anxiety disorder versus withdrawal symptoms, depression, NOS, visual limitations, and musculoskeletal pain, impairments that are 'severe' within the meaning of the regulations but not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No.4." (Tr. 14).

The opinion of a physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is consistent with the other evidence in the record. 20 C.F.R. § 404.1527(d) (1997); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (although not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it.); Mitchell v.

-11-

Schweiker, 699 F.2d 185 (4th Cir. 1983)(a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.").  Conversely, if a physician's opinion is not supported by medically-accepted clinical and laboratory diagnostic techniques and is not consistent with the other evidence in the record, it will not be given controlling weight.  In evaluating how much weight should be given to the opinion of a physician, the nature and extent of the treatment relationship will be taken into account.  Id.  An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled.  DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

A review of the ALJ's decision reveals that she found the following:

> I have considered the opinion of Dr. Cole, an examining physician, who determined as a result of depression, NOS; panic disorder with agoraphobia, chronic and severe, and avoidant personality disorder, the claimant would be unable to interact with the public, co-workers, or supervisors and would have difficulty maintaining concentration in a work setting. I find little evidence to support Dr. Cole's findings. He took at face value the claims the claimant made with regard to the severity of his agoraphobia and panic attacks. The record shows the claimant received very little treatment for his anxiety/panic attacks (and has never been hospitalized or undergone counseling); and in fact during the two year period he was incarcerated (October 1999 to October 2001) he apparently received no treatment/medication whatsoever for anxiety or panic attacks, without developing increased symptoms. The claimant appeared to have no difficulty coming for the scheduled examination with Dr. Cole. During Dr. Cole's exam, the claimant volunteered information freely and answer[ed] all questions without being defensive or evasive. I have assessed little weight to Dr. Cole's opinion as its not supported by the overall evidence in the record.
>
> . . . Based on a review of the overall evidence of record, I find the claimant would have no more than "moderate" restriction in his

activities of daily living, social functioning, and the ability to maintain concentration, persistence, or pace.

After considering all the evidence of record, including the hearing testimony, I concur with the State Agency's assessment and find the claimant has the following residual functional capacity: He can lift 50 pounds occasionally, 20 pounds frequently, and can sit, stand or walk six hours each during an eight hour workday. He would be limited to "frequent" use of his right upper extremity to operate hand controls and to perform fingering due to his finger contracture, and could never climb ladders, ropes, or scaffolds. Due to his decreased vision (20/50, Os and OD) he should avoid working with sharp objects and would be unable to work with small objects. In addition the claimant has moderately impaired ability to handle detailed tasks, interact with the general public, and make independent plans. This represents the claimants capacity given the effects of his substance abuse.

(Tr. 18-19).

Based on the medical evidence and the reasoning above, the undersigned finds that there is substantial evidence to support the ALJ's decision. A review of the medical evidence reveals that, with the exception of a fifth finger right hand distortion, his musculosketal examination was normal. (Tr. 145-156). There is no medical evidence that plaintiff has sought significant treatment of a musculoskeletal disorder. As to his social/anxiety disorder, there is somewhat contradictory medical reports between Dr. Cole who did the psychological evaluation at the requests of plaintiff's attorney and the results of the examination by Dr. Koefoed and the state agency consultants. Dr. Cole found that plaintiff's concentration is poor and he would not be able to interact with the public, co-workers, or supervisors due to panic disorder, avoidant personality disorder, and depression. (Tr. 199). However, Dr. Kofoed concluded that plaintiff was limited only from work entailing stress and complex tasks. (Tr. 160-161). However, there is substantial evidence to support the ALJ's decision based on all of the medical evidence of record. The ALJ did limit plaintiff as being moderately

impaired in his ability to handle detailed tasks, interact with the general public, and make independent plans.

As to plaintiff's credibility, the ALJ found his allegations not totally credible.  In assessing complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists,  (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record.  See Craig v. Chater, 76 F.3d 585 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994).  A claimant's allegations of pain itself or its severity need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers.  A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.   20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).


As to allegations of pain, the Fourth Circuit has often repeated that, "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain, such as heat, swelling, redness and effusion." Craig, 76 F.3d at 592 (identifying two-step process by which ALJ must first determine if the claimant has demonstrated by objective medical evidence an impairment capable of causing the pain alleged and if so, must then assess the credibility of the claimant's subjective accounts of pain); Jenkins v. Sullivan, 906 F.2d 107, 109 (4th Cir. 1990).

-14-

The Commissioner has promulgated Ruling 96-7p to assist ALJs in determining when credibility findings about pain and functional effect must be entered, and what factors are to be weighed in assessing credibility. The Ruling directs that,

> When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. *This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects . . .*
>
> An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.
>
>                                          . . .
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

Ruling 96-7p (emphasis added).

An ALJ's duty to make credibility findings about the plaintiff's statements about pain in a mental impairment case is just as important as in one alleging a physical impairment. See, e.g., Snell v. Apfel, 177 F.3d 128 (2d Cir. 1999). A reviewing court cannot determine if findings are supported

-15-

by substantial evidence unless the Commissioner explicitly indicates the weight given to all of the

relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (remand required based

on failure to indicate weight given to medical reports). The Fourth Circuit has recognized that it is

especially critical that the ALJ assess a plaintiff's credibility as to accounts of pain. As the court

stated in Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir. 1989) (citations omitted):

> [i]t is well settled that: '[t]he ALJ is required to make credibility determinations--and
> therefore sometimes make negative determinations--about allegations of pain or other
> nonexertional disabilities . . . . But such decisions should refer specifically to the
> evidence informing the ALJ's conclusion. This duty of explanation is always an
> important aspect of the administrative charge, . . . and it is especially crucial in
> evaluating pain, in part because the judgment is often a difficult one, and in part
> because the ALJ is somewhat constricted in choosing a decisional process.

The ALJ cited numerous reasons for finding that plaintiff's credibility was not without

question. For instance, the ALJ concluded that:

> I also have considered the claimant's statements/testimony and their
> impact on his ability to work and conclude they are not entirely
> credible in light of discrepancies between the claimant's assertions
> and information contained in the documentary reports. He alleges
> disability due to a "severe" panic disorder, since 1994. The record
> documents a history of alcohol abuse, with numerous inconsistencies
> with regard to having stopped drinking. He testified at the hearing on
> February 9, 2004, that he had not had a drink "in a year or so." He
> told Dr. Cole during his examination in January 2004 that he had not
> had anything to drink "in several months," which is inconsistent with
> "a year." He told the Disability Determination Service in December
> 2001 that he had had nothing to drink since he went to prison and he
> told a consultative examiner in March 2002 that he had been clean
> three years when such was not the case. In September 2002, the
> claimant told a family physician the he was "back to drinking"
> (exhibit 7F, page 1). During that same visit, the treating physician
> noted the claimant had been "doctor shopping" for Xanax (while also
> stating he had no money for mental health treatment). The claimant
> clearly has a long history of substance abuse, both alcohol and
> benzodiazepines, has recently exhibit drug seeking behaviors, offers
> conflicting statements about sobriety and has undertaken no treatment

for his addi[c]tions. I conclude that his statements about sobriety are not credible, and that his statements about a panic disorder are a justification for drug-seeking rather than a credible mental impairment.

The claimant testified that long-term anxiety had prevented him from working. He presented this mythology in March (exhibit 2F, page 2) and April 2002 (Exhibit 7F, page 7), stating this had been the case for several years. However, his prison records (From October 1999 through October 2001, Exhibit 4E and 9F) do not reflect any such complaints. I note in a letter dated March 16, 2004, the claimant's attorney admitted the prison record contained no references to anxiety; and stated the claimant said "that's because they don't treat anxiety in prison."  I find this allegation is not credible, as I have reviewed lots of South Carolina prison records in which treatment (with medication) has been provided for mental health issues, including anxiety. A review of those records shows the claimant just never reported problems with anxiety. I conclude that the claimant indeed does not have a disability anxiety disorder, because he never complained of it in prison, knowing, apparently, that such complaints would not likely result in a Xanax prescription. (See exhibit 9F, p.1).

(Tr. 18).

There is substantial evidence to support the ALJ's decision as to plaintiff's allegations as to his impairments. The ALJ properly considered the inconsistencies between plaintiff's testimony and other evidence of record in evaluating the credibility of plaintiff's subjective complaints and did not base her decision solely on the fact that plaintiff did not receive medication in prison for anxiety/social disorder as plaintiff argued.

Based on the above, the ALJ's evaluation of plaintiff's subjective complaints complies with the Fourth Circuit precedent and the Commissioner's regulations.  The ALJ adequately addressed each complaint, as discussed, and explained her evaluation. While the plaintiff may have limitations, there is substantial evidence to support the ALJ's decision that they are not so severe as to preclude him from the demands of all work.

-17-

At the fourth step in the sequential evaluation, the ALJ concluded that based on the plaintiff's functional limitations, he could not perform his past relevant work. Therefore, at the fifth step, the ALJ has to decide whether plaintiff's impairments prevent him from doing any other work in the economy.

The purpose of a vocational expert's testimony is to assist the ALJ in determining whether jobs exist in the economy which a particular claimant could perform. Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989). The ALJ found that the plaintiff has the residual functional capacity to lift 50 pounds occasionally, 20 pounds frequently, can sit, stand, or walk six hours each during an eight hour workday. The ALJ found that he would be limited to "frequent" use of his right upper extremity to operate hand controls and to perform fingering due to his finger contracture, and could never climb ladders, ropes, or scaffolds. Due to his decreased vision, the ALJ concluded that he should avoid working with sharp objects and would be unable to work with small objects. Additionally, the ALJ concluded that plaintiff has moderately impaired ability to handle detailed tasks, interact with the general public, and make independent plans. (Tr. 19). Therefore, the burden shifted to the Commissioner to show other work existed in significant numbers in the national economy that she could perform. The Commissioner met this burden through the testimony of VE. (Tr. 61–65).

The ALJ  presented a  hypothetical to the VE based on an individual age, work experience, education and residual functional capacity to perform as set out above. The hypothetical that the ALJ presented to the VE, Dr. Hecker, was as follows:

> . . . Assume that he would have moderate impairment in the ability to handle detailed instructions, and to interact with the general public, and to set realistic goals or make independent plans, in combination with 6f, a physical capacity to perform medium work so long as hand controls on the right would be limited to frequent, and fingering is

limited to frequent with the right hand, and that he didn't work with very small objects, because his visual acuity is such that he shouldn't work with small objects.

(Tr. 62-63).

The VE responded with several jobs that plaintiff could perform within a 50-mile radius of Greenville. (Tr. 64). The ALJ is required to set out the claimant's physical and mental impairments. The ALJ need not treat every allegation of impairment by claimant as fact; the ALJ is entitled and required to make factual determinations on disputed conditions. In this case, the ALJ found claimant's claim of total disability not entirely credible. The ALJ posed a hypothetical to the expert based on those allegations of impairment which the ALJ concluded were credible and supported by evidence in the record. Based on the testimony of the VE, the ALJ held there were relevant jobs in the national economy, in significant number, which the plaintiff could perform. Therefore, the ALJ properly relied on the VE's testimony in finding that the plaintiff was not disabled because he could perform jobs that existed in significant numbers (Tr. 21). Lee v. Sullivan, 945 F.2d 687, 693-694 (4th Cir. 1991). Accordingly, the undersigned finds that the ALJ's hypothetical to the VE was not defective but was supported by substantial evidence.

This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson, 402 U.S. at 390. Even where the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989.

-19-

## VI.  CONCLUSION

Despite the plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this court concludes that the ALJ's findings are supported by substantial evidence and recommends the decision of the Commissioner be affirmed. Therefore, it is

RECOMMENDED that the Commissioner's decision be AFFIRMED.

Respectfully submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 14, 2006
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"**
**&**

**The Serious Consequences of a Failure to Do So**

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503
